Thank you, Your Honor. Good morning. May it please the court, my name is Leslie Rawls and I represent the appellant Escovio Rios. Can I ask you to speak up, please? Thank you for letting me know. I hope it's better. This appeal involves two issues, one of which is subject matter jurisdiction and the second is sentencing error and considering an inappropriate factor. The second is an alternative. I did notice on the docket description this morning that the description of this case appeared to say that the plain error standard of review applies to subject matter jurisdiction. Of course that's a de novo standard of review and the sentencing error is plain error review. The subject matter jurisdiction appears perhaps to be a case of first impression. All of the cases in the other circuits that the government and I put in the briefs are more mirror images like this court's decision in the Czar where it involves, these cases involve the application of local law to prisoners who were transferred back to the United States. And this case involves a prisoner who was transferred from the United States to Mexico. What was the jurisdictional error that you assigned to the district court? That the district court lacked subject matter jurisdiction because under the treaty, and this is supported by statutes and those case laws, the treaty transferred. You're pretending the district court lacked subject matter jurisdiction? Yes. And what is the basis for that given that the district court was the court that imposed the revocation sentence in the first place? It imposed the sentence and the supervisory release. And why wouldn't the court that imposed the sentence and set the terms of the supervisory release be the one to set a reasonable revocation sentence? Because of the treaty between the United States and Mexico, which provides that it's in Article 5, Section 2, when an inmate is transferred to Mexico, it's the receiving state in the treaty. But for ease of conversation, I'll just say Mexico is the receiving state and when it's the transferring state, the United States. We didn't relinquish its jurisdiction when it was transferred to Mexico. I'm sorry, I didn't hear you very clearly. We're having trouble hearing you too, so we'll all talk. Okay. I'm sorry, what was your question? Our position is that it did not, that under the treaty, all of the conditions of the sentencing transfer to Mexico, including in the express terms of the treaty, any conditional release periods. It would have to be an explicit statement from Congress that the district court was divested of jurisdiction. And this is the same Congress that passed the Sentencing Reform Act and the revocation powers and revocation of supervisory release. And you're saying that the same Congress or that Congress, having passed the Guidelines Act and the supervisory release conditions, somehow meant to divest the district court of jurisdiction? It seems to me the district court was conferred jurisdiction. The treaty says it's transferred, that the completion of the sentence is transferred to Mexico in this case, with certain limited exceptions. But it says that it was transferred. The treaty was ratified by Congress. It was transferred, but the Article 6 of the treaty said that the transferring state retains, quote, exclusive jurisdiction over any proceedings to challenge the sentence. And so Mexico would have retained jurisdiction, re-retained jurisdiction, and the treaty says that explicitly. So I'm saying, what I'm suggesting is that given the combination of the sentencing guidelines that Congress passed and the treaty and the explicit language in the treaty itself, how is there any divestment of jurisdiction? The treaty Article 6 that you cite to says that the United States courts retain jurisdiction over any proceedings to challenge, modify, or set aside the sentence. That's one of the places where jurisdiction is retained. Revoking the sentence is not a modification of the sentence. Revoking the sentence results in creating an entire, in this case, entirely new sentence. It didn't change his sentence. And in the statute in 183583E, it talks about modification of conditions for supervised release and revocation. And the statute title, which has to be read as part of the statute, separates those two things. So it's modification of conditions or revocation. And then parts of the subsection deal with modifying conditions, and one deals with revocation. If we shift the facts a little bit, say the United States District Court included a term in the supervised release period that the defendant had to engage in a particular substance abuse treatment program. And then the inmate was transferred to Mexico under the terms of the treaty. And that substance abuse program was not available there. Could the district court fairly then conduct a hearing? I'm just going to imagine he winds up back in the United States legally and leave that question out. But could the United States District Court then revoke his supervised release because he failed to engage in a program that was one of the conditions of supervised release? The scenario is different, but the premise is the same. That the conditions of supervised release are expressly delegated to the Mexican court under the treaty. And the treaty is in the Medellin versus Texas case, the Supreme Court said that when a treaty is ratified and self-effecting, that is, it doesn't need any more legislation, in order to be put into effect, then it becomes the law of the land. I don't see how you position squares with Article VI of the treaty, which seems to me to say in fairly explicit terms that the transferring court here, the United States, retains exclusive, and I'm quoting the words, exclusive jurisdiction over any proceedings to challenge the sentence. How do you get around that? Well, it's challenge, modify, or set aside the sentence. And I believe if we look at them separately, what happened was there was no proceeding to challenge the sentence. There was no proceeding to set aside the sentence. The proceeding was to revoke the supervised release period. And at best that might come under the modification clause. But when we look at the statute governing modification or revocation of post-release supervision periods, this word modify does not match the statute, and therefore my argument is that it doesn't apply, that particular provision. So Article V, Roman Neumann, my strong point, I'm not sure what it is, talks about jurisdiction. Yes. And none of these other provisions in the treaty use the word jurisdiction. And your argument is about jurisdiction, right? Yes. Article VI talks about jurisdiction, which Judge Wilkinson was talking to you about. Yes. Not particularly helpful to you. So looking at Article V, is there anything in there that talks about, which I thought you were getting, you were relying on Article V. So Article V, Section 2 is the basis for the argument. Right. Because it says completion of the sentence shall be carried out according to the laws and procedures of the receiving state. Right. Including reduction of the term of confinement by parole, conditional release, or otherwise. Right. But your whole argument why, because this argument wasn't made below, your argument has to be jurisdiction is lacking here. And that's what it is. Good for you. But the only place in the treaty that we're concerned with that talks about jurisdiction is Article VI. That's the only place that the word is used. But when Article V talks about Mexican law applying to, or the receiving state's law applying to the completion of the sentence, all the terms and conditions of the sentence, the only thing they can't change is the total length. When the term sentence is used in the treaty, it's talking about both confinement and conditional release. So the receiving state cannot increase or decrease that total term. But it does determine the period of release when there's a conditional release. And as the judge noted in the district court, the release here occurred before he would have been released from United States custody. Ms. Rawls, the Article V, Section 2 begins with a qualifier or a modifier that says except as otherwise provided in this treaty. So it suggests that there might be another avenue by which a sentence could be changed or adjusted. And then we have Article VI, which you talked about, which gives exclusive jurisdiction to the transferring state. And then it says regardless of their form, to challenge, modify, or set aside sentences. So given that broad, capacious language that suggests it doesn't matter how you describe it, so long as there's some change in the sentence, why wasn't the district court within its authority to revoke supervision, given the broad language of Article VI? Because revoking supervision is more than modifying. It involved creating a new sentence. And so it's different than just modifying sentences. Well, it is a change, isn't it, of sorts in a cosmic sense? It is a change in the cosmic sense, yes. But the treaty, it has a few places. In Article V, Section 2, it also says pardon or amnesty is one of the places where the United States would still retain jurisdiction. So if this had been one of the marijuana cases that President Biden recently created a pardon for, then he would have been pardoned if the original case had. But our position is that the revocation of the supervised release and the creation of a new sentence was not a modification as allowed under the statute and under the treaty. And I'd like to briefly address the second issue with regard to the, if you don't have any other questions. I have a lot of questions. I think this is a really difficult question. If this is all you have to tell us, I don't think that the second question is very difficult. But you portion your argument as you like. Okay. Do you have specific questions you want to ask me about that? I think I've asked all the questions I can try to come up with. Okay. So go ahead and talk about this. Well, in the Azar case, this court dealt with the mirror image. And this is discussed in the brief. And there is no split in the circuits about this. Because as far as I can tell, and the government noted that it's not in either of our briefs,  the subject matter jurisdiction. I was sticking with the first argument. In Azar, this court said that even though an inmate had received good time on a sentence that was imposed by the United Kingdom, when she came to the United States, she was not necessarily entitled to that credit. And she had objected and appealed because the parole commission refused to give her that credit. So this court has looked at the mirror image of this case and said, the other court's laws don't apply. The United States' laws apply. And with that rationale, the same thing applies to a transfer to Mexico. The United States' laws and decisions don't apply, with exceptions, obviously. But the Mexican laws do, including on the terms of conditional release. All right. Thank you. Mr. Enright. Thank you, Your Honor. May it please the Court. Anthony Enright for the United States. The district court had subject matter jurisdiction to revoke the supervised release that it imposed. The statutes 18 U.S.C. 3231 and 3583 confer that jurisdiction to revoke supervised release, and that continues until the supervised release terminates or expires under this court's precedent. Nothing in the 1976 treaty with Mexico purports to limit that jurisdiction, let alone does so by a clear statement. It states, I have the actual treaty here, but I thought I could read it at that distance. I can't. The completion of a transfer defender sentence shall be carried out according to the laws and procedures of the receiving state. But that's an entirely separate issue than jurisdiction. A clear statement doesn't have to use the term jurisdiction, but it ordinarily has to refer to the court's adjudicatory capacity. This kind of claim shall not be entertained. The court shall not consider. Something along those lines. It has to be mandatory language, and there usually has to be something special in addition to the mandatory language. Shall be considered? Is it mandatory? Shall be considered. Certainly. I think that would be. It says shall be considered. I'm sorry, Your Honor. I may be misunderstanding, but I'm not sure what passage you're referring to. I'm sorry. I misread it. That's because my eyes are going on me. Right, Your Honor. What does that mean? Well, I think it means that the sentence will be executed. He's transferred to Mexico, and so he'll serve in a Mexican prison. Mexican authorities won't have authority to determine the total length of the sentence, which is the combination of incarceration and, for example, parole. But Mexican authorities ordinarily would have the authority to decide that he'll serve part of that sentence on parole. We do the same thing when people are transferred here. But there's nothing in the treaty that really allows the Mexican authorities to, say, relieve someone of the sentence that was imposed here. And I think more importantly for this case, there's nothing in the record or elsewhere that suggests Mexican authorities purported to do that. But if Mexican authorities did, and I'll respond to the hypothetical my friend mentioned, which is, well, I was sentenced to a specific drug treatment program, wasn't available in Mexico, what's the district court supposed to do? That would be a merits question. So if your defense is I couldn't comply with that obligation because I was in Mexico or because something the Mexican authorities did relieved me of that obligation, that would be a substantive question of who wins under the law. And that would be a question for the district court in the Western District of North Carolina to resolve in a proceeding to revoke supervised release. It doesn't speak to an absence of jurisdiction over the question. Are you familiar with the Department of Justice's Justice Manual? Yes, Your Honor. Okay. And it says that when a prisoner is transferred to another country, the sentencing court loses jurisdiction over the prisoner's sentence and violations of the terms or conditions of the original sentence, including supervised release, cannot be enforced by U.S. courts. Your Honor, I have to admit I didn't see that provision. I am familiar with the Justice Manual, and I apologize because that's something I should have been prepared for. Section 9-35.014. You know, I'm going around reading that Justice Manual all the time, actually. That's a fair point, and I do apologize because I absolutely should have known that. So what do you have to say about that? Well, it doesn't – it's not a statute, which is probably the first answer. So it's wrong, is that it? I don't know that it's wrong, Your Honor. I'm almost certain it's not speaking to this scenario where a person comes back because in the ordinary case, and I would say – It goes on to say this is true even if the prisoner returns illegally to the United States after satisfying the sentence in the foreign country. I have to say, Your Honor, I really wish I had spotted that before you did, but I did not. That is not my understanding of the statute, simply because there's rules governing what qualifies as subject matter jurisdiction. Now, the one suggestion I would offer is that jurisdiction is often used in a loosey-goosey term, loosey-goosey way, and I'm not necessarily suggesting that the Justice Manual is using it in that way, but what this court ought to do is follow the precedent governing what qualifies – how you determine whether a court has jurisdiction. The second point I want to mention is this other language in the treaty, Your Honor, mentioned also, which is Article VI, which refers to exclusive jurisdiction. If the treaty itself – and by its terms, the treaty is not self-executing. Article IV says it requires implementing legislation, but to the extent the treaty speaks about jurisdiction, it does so explicitly, especially when it's speaking about exclusive jurisdiction. Well, in any of the provisions that are applicable here, where does it talk about jurisdiction? It doesn't, and that's why – that, I think, is dispositive. Well, it does one place that helps you, and that's in Article VI. Oh, yes, Your Honor, that's what I was referring to. I'm sorry. I thought you meant the article the defense was relying on. Article VI speaks about jurisdiction and exclusive jurisdiction, and it reserves it to us, and that does two things. One, it suggests that Mexico probably didn't purport to modify this sentence, and two, it tells us that when the treaty speaks of jurisdiction, it uses that term. And when it speaks – and even jurisdiction, Your Honor, doesn't need to be exclusive. So, for example, if there's jurisdiction in Mexican courts, that doesn't mean that there's no jurisdiction in United States courts. Here, when it speaks of exclusive jurisdiction, that's what it means, but the fact that it didn't use that language when referring to the authority of Mexican laws to determine how the sentence should be carried out tells us that that is more evidence, that that's not a jurisdictional provision. And finally, to the extent there's a conflict between the Treaty of 1976 and the Sentencing Reform Act of 1984, which explicitly and without qualification grants jurisdiction to the sentencing court to revoke supervised release, it's the later in time statute that governs. I do want to turn to the second issue, which is the – whether the district court plainly erred by considering an impermissible factor, by considering the history of the defendant before he returned to the United States. And the answer is no. The district court was very clear that what it was punishing as a sanction and considered to be a particularly egregious breach of trust was the defendant's violation of law, of the United States law, and violating the conditions of supervised release after receiving what amounted to leniency because he was let out of prison earlier than the court expected. And the court made that clear. It said it's the prerogative of the Bureau of Prisons and the Mexican authorities to do that, but the defendant really stuck a thumb in the eye of those authorities by coming back promptly when being given leniency. And this court's precedent is – there's plenty of decisions I cited allowing district courts to give significant weight to a violation in the face of leniency and consider that a significant aggravating factor. The district court did that properly, did not consider an impermissible factor, and imposed a substantively reasonable sentence. If the court has no further questions, and if it does, I'm happy to answer them. But if it doesn't, I'll yield the balance of my time back to this court. Any questions? Briefly, if I could address the second issue that counsel raised with regard to the court's consideration of the early release by Mexico. It's clear that under the treaty, and actually the judge said it, Mexico had the right to release Mr. Rios before his time would have expired in the United States, that that was the prerogative of the receiving state. The court also made it clear that it was sentencing him to a significantly higher sentence than the guidelines because it was an early release. And the court said that repeatedly. Well, he shouldn't even be out. I don't have the transcript, I'm sorry, I'm paraphrasing. He shouldn't even be out yet, but the Mexicans let him out, and he came out early. And he does say the things that Mr. Enright said. The judge did say that it was sticking a thumb in the eye by coming back to the United States. But the emphasis in that part of the transcript is on his being released, and it's during the sentencing arguments, and it's during the sentencing itself. The emphasis is on his being released before he should have been. And I say should have been under the sentence he would have served if he had stayed in the United States. And that was the emphasis of the court. I think I've covered the rest of my argument, but if you have any questions, I'd be happy to answer them. Could we just ask that the sentence be vacated, and if there's no subject matter jurisdiction, remanded for dismissal, and otherwise remanded for... We have no further questions. Thank you. Ms. Rawls, we appreciate seeing you court appointed. We appreciate the diligent efforts you've made on behalf of your client. Thank you. I'll ask the courtroom deputy to adjourn court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Albert Diaz, Diana Gribbon Motz